May it please the Court, I'm Alan Graff for the plaintiff relator Steven Mateski. I would like to reserve three minutes at the end of the argument. We'll have to help keep track of your time. I will. Thank you. The district court incorrectly ruled in this case that the plaintiff appellant, Mateski, did not plead any false claims. And even if he did plead a false claim, then those false claims were not material as a matter of law concerning the government's decision to pay the invoices that were presented by Raytheon for the work on the Veer's censor. This was a completely erroneous decision. Counsel, I have one concern that I'd appreciate your addressing. Ordinarily, when a new complaint is filed, that's the only complaint that we're allowed to look at in determining whether the pleading is sufficient. And the fifth amended complaint contains not much in the way of detail at all. The fourth amended complaint contained a lot of detail. But there's nothing in between. How can we find the level of specificity that's required in the fifth amended complaint? Or is there some theory on which we should also look back at the fourth amended complaint? Well, we were responding to Judge Wright's requirement that he found the fourth amended complaint incomprehensible. Right. But you don't – I mean, that's the reason there was a fifth amended. But it doesn't have to go from, you know, hundreds of pages to nine pages or whatever. Well – There is an in between that makes it comprehensible but detailed. And I guess that's my concern. Excuse me, Your Honor. All of the key allegations that are in the fourth amended complaint in loving detail are summarized in the fifth amended complaint. The willful and deliberate falsification of records and test results in order to conceal the noncompliance with the mandatory provisions of the contractual – of the VIIRS contract and also of the – what was called the NGID, which was prepared by the Department of the Air Force, which was to govern the – all of the project of this satellite system called the NEPOS. VIIRS was a component of that. So you can trace in the paragraphs of the complaint all of these allegations that are being made. And I would like to remind this Court that the fourth amended complaint was found perfectly comprehensible by the Ninth Circuit in the Metesky 1 case, which dealt with the public disclosure bar. But the Court specifically found that Metesky pleaded false claims and was basically saying now it's time for discovery on these false claims. Judge Wright rejected that when the case went back to him and said that – We still have the who, what, where, why of Rule 9 that's required. And so, for example, like on materiality, a key element here in the key TAM situation, the district court says the only thing you have are conclusions. You don't have any details. So if you would – let's use the Fifth Amendment complaint as our baseline here, and maybe you can point to me where the materiality is alleged. The materiality is alleged in the Fifth Amendment complaint in that the – Just give me the paragraph or page number. That would be helpful. All right. Well, may I get the excerpt of record? I have the Fifth Amendment. I mean, that's the only thing at issue here. It's the nine pages. It seems to me the nine pages that the district court found were insufficient. Well, in the Fifth Amendment complaint, we describe the VEERS contract. I have this here. This.  All right. Discussed were the – we identify all of the deviations from the mandatory bill provisions of the contract. We then go on to say, to put them on notice, that it was Raytheon and the 9B issue of not specifying, identifying individuals and people which were identified in the Fourth Amendment complaint. I know we're sticking with the Fifth, though. We are sticking with the Fifth. But it was Raytheon that did it. We're not making allegations against individual actors at Raytheon. Raytheon is the only defendant. When I read this, it says they failed to complete certain tests in violation of. They did certain things. It all is very conclusory. And usually in these key TAM cases, what we're seeing is that, you know, this kind of certification was sent in, that they varied with this particular  Correct, Your Honor. But the district court here attacked the complaint because it was too long. No, but there's a far difference between nine pages and 143. And, you know, we've seen a lot of key TAM complaints. And you don't have to have 143 pages to say what the key elements are. So my concern is that we don't – I can't see that here. And then I also don't see that you asked on appeal, like, for another chance to amend. Is that true? On this appeal? Yes. We have not asked for another chance to amend. But if that is – you know, we were caught between a rock and a hard place in this case. We were told in Metesky 1 that we pleaded adequate false claims. And now it was going to be – Well, no, you were told in Metesky 1 that the public disclosure bar did not stop this from going forward, but the holding did not go beyond that to deal with materiality or the other factors, at least as I read it. Okay. It dealt with the original grounds for dismissal were on the public disclosure bar. But the case very pointedly said that Metesky pleaded false claims. And it goes on to elaborate what the false claims were, which were false testing, false test results, false recordkeeping, in order to conceal, in order to conceal the very fact that they weren't performing in accordance with the mandatory provisions of the BUILD contract and the NGID. And the NGID was a very, very precise – prepared by the government for all of these satellite programs and said you needed not one but two contracting officers to sign off on any mandatory provision of the NGID. That was not – that was not done. And so we then made it intelligible for the district court, as we were required to do, and we asked – we submitted it and he dismissed it again, saying not on the grounds that the complaint didn't give enough detail, but he dismissed the case on the grounds that we inadequately plead a false claim. And we pleaded three false claims. We pleaded a factually false claim that – and we pleaded an express – an express false certification. And third, we pleaded an express implied certification. The district court then said, in this case, that the – that the requirement for all of these false claims was a specific misrepresentation that if you told the truth, you revealed material facts of your noncompliance with these provisions, would be false. Now, that is not a requirement for factually false certification. It is not a requirement for express false certification. And it is a requirement, according to this Court, for implied false certification. We did plead on information and belief that there were these false representations, which, if the truth were revealed, would be misleading half-truths. But those are not required for express false certifications and for factually false claims. Now, as for materiality, the materiality is alleged in the complaint that it affected the government's decision to pay. Counsel, so that was Judge McKeown's question several minutes ago. Could you give us the paragraph you want us to look at for the materiality allegation? For the materiality allegation in the complaint? Right. Yes. I did not bring a copy of the complaint. I'm sorry. I will – I believe I have it in my – Do you want to point it out when you come back? Excuse me? Do you want to point it out when you come back to the microphone? All right. I will point it out when I come back to the microphone. But, as I said, we pleaded false claims adequately. Well, that – you know, that's kind of the problem. We pleaded false claims. You can't just plead a false claim in a broad sense under the Rule 9. Well, a factual false claim – You can't just say a factual false claim. They made a false claim because they submitted something or they – it was a false claim because they didn't comply with something and then they submitted it. Well, that is alleged clearly in the complaint. I know, but that's not enough. So that's the problem. You can't just wave your hands and say, well, we alleged false claims. It has to meet the Rule 9 specificity. Well, we did – the specificity that it is met because there are no – the 9B rules would say that I – Raytheon did it. So Raytheon is the actor – is the who. The what is they submitted false claims. The when is stated from 2002, I believe, up until 2010, that they – while they were working on the VIIRS sensor, they were doing these – they were not following the NGID. And the when was – excuse me, the where was in the Raytheon labs in El Segundo and in this district, basically. Counselor, you're down to about two minutes. Did you want to save that for Rubano? I will save that for Rubano. Thank you. Good morning, Your Honors. And may it please the Court, Paul Wolfson for Raytheon. The Fifth Amended complaint in this case suffers from two fundamental defects. First, it fails to allege a false claim under any of the theories of falsity that the courts have recognized under the False Claims Act. Indeed, it fails to allege anything specific about a claim at all without any specific allegation that Raytheon made a statement, representation, certification, or assertion of any kind to the government that was false or misleading. The complaint can't go forward. Second, and separately, the complaint fails to allege that any falsity was material to the government's decision to pay Raytheon's invoices. As the Supreme Court explained in Escobar, where the government continues to pay despite having knowledge of the violations, that is, quote, very strong evidence, unquote, that the representations were not material. Counsel, let me ask you sort of an overarching question. The Fourth Amended complaint was at the other end of the spectrum from previous counsel who I believe had passed away between the Fourth and Fifth Amended complaints. And it may have been overly detailed, but it seems to me at least that it may have met those requirements. And I guess I'm troubled by this. This is not a sort of fly-by-night case. These were serious allegations that were investigated for quite some time, and the thing that concerned the plaintiff here actually came to pass. The satellite ultimately failed for some of the, potentially some of the reasons that he pointed out. And I guess what I'm wondering is whether this is a case that would benefit from mediation. The complaint, there have been many efforts to write a correct complaint, which so far have been unavailing, but it seems to me that the allegations are pretty serious ones. And I imagine you may not be able to answer on the top of your head, but that was a thought that passed through my mind. I understand. I'm not in a position to respond about the possibility of mediation right now. Let me make a few responses to the points that you made. First of all, just to be clear, VIIRS is operating, and it's operating beautifully. And you can go on the Internet and see the data and the pictures that it is transmitting. Now, I recognize what he has alleged, but I just want to be clear about that. Secondly, the Fourth Amendment complaint was, yes, extraordinarily detailed about some things. It was not at all specific about the contents of a claim made to the government. So that is not a difference between the Fourth Amendment complaint and the Fifth Amendment complaint. And it is not — that's a problem that the district court pointed out in its order dismissing the Fourth Amendment complaint the second time. It pointed out that the complaint was sort of excessively prolix. But then it also observed, and by the way, there's nothing in here about the actual claim, which is the sine qua non, as the Court has said, of the False Claims Act. That was not — You can have a claim under the False Claims Act that doesn't rest on the submission of a bill or an invoice, can't you? Do you agree with that? You can, but he has not alleged — But let me just ask you, do you agree with that? You — it can be — the false statement or representation does not have to be sort of in the actual bill. Invoice, billing. Right. But he hasn't alleged that it was anywhere else here. I mean, his theory, you know, which is in the complaint, which is in sort of 13, 14, 15, and 16 of the complaint, is that the complaint is — I'm sorry, that the claim, the invoices, would there, you know, contained falsity. But he has not alleged anything specific to allow the Court to reach the conclusion that, you know, he states a claim under even Rule 8, much less, you know, Rule 9b. I mean, he — I think he's quite straightforward about this. He says, I'm alleging on information and belief that there was a false certification on it. I think what he's essentially saying is, I don't know, I don't have the information, but it just must have been so. You know, it must have been because — and I think he's quite honest about this, quite straightforward, because I worked for a long time in the aerospace industry, and this is what, you know, just contractors do this thing. That's what they do. Well, he's saying a little bit more than that, and I don't think that you're arguing that he has to have been in the billing department and have a bill. I think that's your answer to Judge McEwen's first question, if I'm understanding you correctly. I think he has to have — he has to put forward information about what is in — enough information about what is in the bill for the Court to be able to stay with particularity, that that statement in or accompanying the bill was either expressly false or, you know, as the Court explained in Rose, sort of that best-of-half truth in light of the affirmative — the inaffirmative statements that he made. So if you look at the Court's decision in Rose, I think what that did is it sort of brought all the three theories of falsity kind of into alignment and said there has to be some affirmative sort of — some affirmative statement, representation, assertion sort of in the bills or in, you know, to the government from the contractor that — So, I mean, this bill thing does bother me because I know that there's interim reports, there are interim certifications that are required in government contracting that are not tantamount to bills. They may be a predicate to ultimately getting paid, but those, too, could form the basis for a false claim, couldn't they? There could be occasions on that, but first of all, that's not — you know, he hasn't alleged that that's where the falsity was and he hasn't alleged anything other than it was — you know, what he says is that the invoices just must have had a false certification. I mean, that's the theory in which he's made. And that's not any kind of operative difference between the Fourth Amendment complaint and Fifth Amendment complaint. That defect was there before. The district court gave him a chance to fix that when he amended his complaint. He didn't fix that in the Fifth Amendment complaint, and that's why the district court said, you know, you've had your chance and I'm not going to give you another chance to — So how does the relator or someone in a key TAM case overcome the situation that usually the bills are kept, of course, by the company in the accounting or billing function and engineers and other people surrounding the project aren't privy to those? So how could he make such a specific allegation? I mean, I think there are relators who — I mean, I think there are relators who do have that information. Or you could have a case — But I understood you concede a minute ago that that's not required. And now are you switching gears? I'm saying that he does have to have some information that he provides in his complaint about what the content of the claim is. And what the false statement is. What the false statement is. And that's really what we're looking for, whether it's in a bill, a certification, or some other checkbox thing. But it's not — but the complaint doesn't tell us that it's — the complaint doesn't indicate that it's anywhere. It doesn't say that it's anywhere in anything that Raytheon submitted to the government. He says it's in the bills. That's his theory. He doesn't give us any reason to think that there is anything in the bills. He's very open about that and says it just must have been there because that's just what contractors do. And then he relies on the FAR, which is a point that we've responded to at length in our complaint, to say that that's just not a legally correct — and then he relies on his adverse inference theory that he ought to have been allowed to have the benefit of an adverse inference. But that's — as we've explained in our brief, that's just not a cognizable theory. That would just get around — that would just get around Rule 9b and really would turn — you know, would sort of minimize the importance of Rule 9b as a gatekeeping function. If I — I'd like to spend a couple of minutes on materiality, if I may, unless the Court has further questions on that. I have one sort of one-off question, if I could. How many times was the complaint alleged before it was unsealed? How many times has Raytheon responded to the complaint? So the first — so the — the original complaint and amended complaints 1, 2, and 3 were sealed. Okay. That answers my question. Right, yes. Thank you. The — I'd like to turn now to the point of materiality. The Supreme Court's decision in Escobar makes clear several things. First of all, material — excuse me — materiality is, as the Court said, a demanding standard. Materiality has to be pleaded with particularity as well as — as well as falsity. And materiality can be resolved on a motion to dismiss at the pleading stage. The Court clarified that materiality, and I quote, looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. And third, in explaining why even an express condition of payment is not necessarily material, the Court stressed that if the government pays a particular claim despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements were not material. Those statements by the Court make clear that the alleged misrepresentations here were not material as a matter of law. Here, we know what the actual effect of the alleged misrepresentation was. Well, that goes a little bit farther. The Court said that it's strong evidence, but it doesn't say that as a matter of law what the payment vitiates the — Not in every case. — potential materiality. I mean, certainly not in every case. We're not arguing that. But, I mean, in this case, we're — you know, we're moving to dismiss on the pleading stage. And I think given this very strong evidence of material — I mean, we know that the government had detailed information of Mr. Metesky's information. The government did a thorough investigation, but nonetheless, it continued to pay wreathing on. It accepted the satellite, accepted the sensor, and it declined to intervene. You know, Mr. Metesky filed his complaint under seal in 2006. He immediately launched into an extensive series of discussions with agency and Justice Department personnel. And despite all that information, the government continued the VIIRS program. It continued to pay, and it accepted the satellite. Now, even — Wait a minute. Can I — can I forgive me for interrupting? But the government did decline to intervene, but it's also continued to pipe in, and it doesn't want this dismissed without prejudice. And that seems unusual to me. Do you want to respond to that? I — you know, I can't second-guess that, but I think that — I suspect that is, to some extent, boilerplate on the part of the government, that it is always preserving its opportunity. What if I say it's not boilerplate as far as what I see? I don't think so. I mean, I would say what's noteworthy about what the government has done here is it has not filed a brief in this court, you know, taking any position on whether the — you know, suggesting that the dismissal was incorrect, which it certainly could have. It was — But it is an uncommon thing, just from our experience. Well, I mean, let me say this. I don't think that the question of whether something is material can be viewed by — it has to be viewed by what the agency's decision is made at the time that it is making the decision to pay, not by what the litigators at the Department of Justice think, you know, 10 years later when they're deciding whether they want to bring a lawsuit. You know, the government had the opportunity to intervene. It was asked — Right. And so I know your time's ticking, but I just want to give you a chance to respond because my read, you know, a million miles away from this,  is that they took six years to decide not to intervene. There were a lot of attempts, it seems to me, to amend the complaint, perhaps to convince the government to intervene. The Fourth Amendment complaint got to the place where it had lots of detail, maybe was described as being tough to comprehend because it had so much detail, at least arguably, if you put yourself in the shoes of your opponent. And then we have the government, again, I think atypically, continuing to chime in and asking that the complaint not be dismissed with prejudice. So I just want to give you a chance to respond to that. I mean, so as I read the statements of interest that the government filed in district court, it was principally addressing, you know, some of the legal issues in the case that, of course, have been bubbling around in the courts of appeals in particular for quite some time, the contours of implied false certification, which, of course, the government came in and argued in rows as well. And then, you know, there is a debate about sort of the exact materiality standard. And the government has been arguing, you know, for — kind of the essence of the bargain standard in some other courts. I would argue that even that is not satisfied here because the government — because the agencies accepted the censor. But, you know, that, I think, was where they were principally concerned about the legal issues. You know, I think the government has had the opportunity to intervene. They've decided not to. They did — this is not a case where the government sort of did a cursory look at the case and said, now we'll, you know, we'll let you, you know, go do your best. This is a case where the government spent years, you know, very thorough investigation. But we can hardly draw anything because if you look at the history of the Keaton litigation, often the government takes years, which makes the relators crazy, because they either say, yes or no, I want to get going with my lawsuit. I understand that. So I'm not even sure we can draw anything other than — And then they often decide not to intervene for resource or other reasons, which you can't draw anything from that. And they often — my experience in looking at these cases and reading government submissions is they kind of like to have their cake and eat it, too. They want to keep their hand in it, but they don't want to do it. So I don't know. I think it's kind of a wash here. I acknowledge all that. I think the point that I was hoping to make was that if there's a paradigmatic case where the government had all the information about the violations, but nonetheless, you know, continued to pay, this would seem to be it, because they did a thorough investigation. I mean, this is not like cases like, you know, to some extent like Campy and Rose, where there was kind of real doubt about what the government knew at the time and did it really have enough information. And then there were questions about sort of, well, maybe the contractor had actually come into compliance and the government decided, no, it's not worth going after here. The government had sort of the full suite of information. And it seems to me it's got to be, you know, the burden on Mr. Metesky to explain some other reason why it would be material. Thank you, counsel. Thank you very much. Mr. Graf, you have a couple of minutes of rebuttal time remaining here. First off, the materiality is found in the Fifth Amendment complaints in allegations in paragraphs 11, 12, 13, and 14. And with respect to the question of the government continuing payment, the government has filed statements of interest in this case, saying that there are reasons why the government may continue to pay, even though they find the breach of the contract, and I don't want to use the false claims, go to the essence of the bargain between the government and the defense contractor Raytheon. And they said that here in statements of interest that are filed and referred to in our brief. They said that this case, this project, what the false claims that are alleged go to the very essence of the bargain between Raytheon as the VEERS subcontractor and the government. You have to remember, Your Honor, that the NEPOST project was canceled by the government, and then they went on to another project, which is called the JPSS. And it is correct that Raytheon received the JPSS contract. But in the statements of interest that the government filed, they said the applicable law that we look to in this, that there may be reasons why we would continue paying a malfactor, a person who has given false claims that we find material to us. But as the Savannah River case, which is a standard they cite, says there may be reasons why we don't want to reinvent the wheel. It may be, and we've had no discovery in this case, so we don't really know. It may be conjectured that, look, Raytheon decided they were caught, and now they're going to clean up their act, and they're going to conform with the requirements of the NGET. That is, in fact, one of the reasons given in the Ninth Circuit's opinion in Gilead. Counsel, you've exceeded your time, and I think we understand your position. Thank you, Your Honor. So the case just argued is submitted. We appreciate both counsel's arguments, and we are adjourned for this morning's session.
judges: McKeown, Graber, Christen